UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-14350-Cannon/McCabe

JOHN C. MCCARTHY,

     Plaintiff,

v.

ST. LUCIE COUNTY BOARD OF
COMMISSIONERS, and
LASHERI BAKER,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law ("Motion") (DE 15), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 18). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED IN PART AND DENIED IN PART.**

## I.  BACKGROUND

This case arises under 42 U.S.C. § 1983 and concerns the drug testing procedures used by St. Lucie County (hereafter "County") to monitor pretrial releasees. On March 27, 2023, the District Court accepted the undersigned's recommendation (DE 10) that a previous version of the complaint be dismissed without prejudice (DE 13). In adopting that recommendation, the District Court warned that Plaintiff would be given one final opportunity to file an Amended Complaint (DE 13). Thereafter, Plaintiff filed an Amended Complaint (DE 14), alleging the following facts, which the Court accepts as true.

On or about October 30, 2019, a state court in St. Lucie County, Florida issued a pretrial release bond to Plaintiff following his arrest on unspecified charges (DE 14 ¶ 7).  During his initial intake procedures, Plaintiff tested positive for marijuana (DE 14 ¶ 8).  Given this, Plaintiff's THC/Creatinine ratio levels could not increase during the time he was on bond, as this would indicate additional usage of marijuana and, thus, a violation of his bond conditions (DE 14 ¶ 8).

The County administers drug tests to pretrial releasees using a screening test manufactured by Microgenics (DE 14 ¶ 10).  According to the Amended Complaint, this type of test is not "to be used to determine if there is new [drug] usage since it cannot test for the specific metabolite required for such testing" (DE 14 ¶ 10).  Indeed, the Microgenics instructions advise test takers that the screening test "is not to be relied upon for new usage" and that a "more specific alternative chemical method must be used to obtain a confirmed analytical result" (DE 14 ¶ 11).

Following his intake screening test, Plaintiff underwent two more Microgenics screening tests on, respectively, November 5 and 13, 2019 (DE 14 ¶ 9).  Plaintiff tested positive for marijuana both times (DE 14 ¶ 9).  Thereafter, on November 21, 2019, Defendant Lasheri Baker (hereafter "PTS Officer") caused Plaintiff to be arrested for violation of his bond conditions, specifically, new drug usage (DE 14 ¶¶ 12-13).[1]  PTS Officer did not wait for confirmation testing before causing Plaintiff to be arrested (DE 14 ¶ 13).

Following his arrest, Plaintiff insisted on his innocence and demanded that confirmation testing be performed (DE 14 ¶ 14).  On December 4, 2019, Cordant Forensic Solutions ("Cordant Lab") performed confirmation testing that showed Plaintiff's THC/Creatine ratios had steadily declined from 14.27 on October 31, 2019, to 3.35 on November 5, 2019, to 1.49 on November 13,

---

[1] The Amended Complaint does not explain how PTS officer caused Plaintiff to be arrested, or whether a state court judge signed an arrest warrant, and, if so, what information was presented to the state court judge to cause him/her to sign the arrest warrant.

2019 (DE 14 ¶¶ 9, 15; Ex. A).  This meant that Plaintiff had not committed a new drug usage, but rather, marijuana had been steadily leaving his system over the timeframe of the three screening tests (DE 14 ¶ 15).

Given this error, the State Attorney agreed to reinstate Plaintiff's bond without a hearing (DE 14 ¶ 17).  A state court judge thereafter granted Plaintiff's unopposed motion to reinstate the bond, finding as follows:

> Dr. Aaron Brown of [Cordant Lab] … determined that there was no new usage by [Plaintiff] and in fact [Plaintiff's] THC level decreased over the period of time between October 30th 2019 and November 13th 2019, the time during which the samples were taken.

(DE 14 ¶ 17; Ex. B ¶ 10).

Following Plaintiff's release from custody, on December 26, 2019, he underwent yet another Microgenics screening test, and he once again tested positive for marijuana (DE 14 ¶ 20). Thereafter, PTS Officer caused Plaintiff to be arrested for a second time for violation of his bond conditions based on new drug usage (DE 14 ¶ 21).[2]  PTS Officer again relied upon the Microgenics screening test, without waiting for confirmation testing (DE 14 ¶ 20).  Plaintiff once again demanded that confirmation testing be performed, which once again confirmed he had not committed any new drug usage (DE 14 ¶ 23).  Given the error, the State Attorney once again agreed to reinstate Plaintiff's bond without a hearing, and the state court once again granted Plaintiff's unopposed motion to reinstate the bond (DE 14 ¶ 23; Ex. D).

In total, Plaintiff spent thirty-eight days in custody as a result of two arrests for new drug usages, when in fact he never committed any such violations (DE 14 ¶ 24).  On March 31, 2023, Plaintiff filed an Amended Complaint alleging the following counts against the Defendants:

---

[2] The Amended Complaint does not explain how PTS officer moved to have Plaintiff arrested, whether a state court judge signed an arrest warrant, and, if so, what information was presented to the state court judge to cause him/her to sign the arrest warrant.

- Count I, Civil Rights Violation Under 42 U.S.C. § 1983 against PTS Officer;

- Count II, Common Law False Imprisonment/Arrest against PTS Officer;

- Count III, Civil Rights Violation Under 42 U.S.C. § 1983 against County; and

- Count IV, Common Law False Imprisonment/Arrest against County.

(DE 14 at 5-7, 10).  This Motion followed, seeking dismissal of Counts I and III pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    STANDARD

In evaluating a Rule 12(b)(6) motion, the Court must accept Plaintiff's allegations as true and construe them in the light most favorable to him.  *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## III.    DISCUSSION

Counts I and III arise pursuant to 42 U.S.C. § 1983, which creates a cause of action against persons who, acting under color of state law, deprive another of a right, privilege or immunity secured by the Constitution, laws, or treaties of the United States.  Here, Plaintiff alleges Defendants violated his Fourth and Fourteenth Amendment rights by subjecting him to multiple arrests and periods of incarceration without probable cause (DE 14 ¶¶ 27-28, 42-43).  Defendants move to dismiss, arguing (A) as to Count I, the doctrine of qualified immunity protects PTS Officer

from liability, and (B) as to Count III, Plaintiff cannot establish a *Monell* claim against the County. The Court will address each argument in turn.

### A.      Count I - Qualified Immunity

As noted in the previous Report and Recommendation, "[q]ualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (cleaned up). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (cleaned up). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Id.* "Qualified immunity is the rule, not the exception." *Rowe v. Schreiber*, 139 F.3d 1381, 1385 (11th Cir. 1998).

Qualified immunity applies only to state actors in the performance of their official "discretionary functions." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004). Here, the Amended Complaint alleges PTS Officer violated Plaintiff's constitutional rights by causing him to be arrested and incarcerated for violations of his bond conditions (DE 14 ¶¶ 9, 12, 20-21). The Court finds these actions to be "discretionary functions."

Once the Court finds a discretionary function, the burden shifts to Plaintiff to demonstrate that qualified immunity does not apply. *Id.* at 1264. In order to meet this burden, Plaintiff must satisfy a two-step test:  (1) he must show that PTS Officer committed a constitutional violation, and (2) he must show the constitutional right at issue was "clearly established" at the time of the

violation. *Id.*; *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, the Court need not address the first step. Rather, as set forth below, the Court finds the Amended Complaint fails to allege facts sufficient to satisfy the second step, namely, that PTS Officer violated Plaintiff's "clearly established" rights.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hamilton v. City of Jackson, Ala.*, 261 F. App'x 182, 186 (11th Cir. 2008) (cleaned up). Put another way, the officer must have "fair notice" of the conduct's unconstitutionality, derived from at least one of the following sources:

(1)     the obvious clarity of constitutional or statutory language;

(2)     fact-specific judicial precedents that are not fairly distinguishable; or

(3)     principles set forth in case law, even though not tied to particularized facts.

*Lucibella v. Ermeri*, No. 20-82156-CIV, 2022 WL 910302, at *6 (S.D. Fla. Mar. 29, 2022) (citing *Eloy v. Guillot*, 289 F. App'x 339, 346 (11th Cir. 2008)). "For qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel (not just suggest or raise a question about), the conclusion for every like situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Lassiter v. Ala. A&M Univ. Bd. of Trs.*, 28 F.3d 1146, 1150 (11th Cir. 1994).

To overcome qualified immunity, therefore, the Amended Complaint must allege facts sufficient to show that PTS Officer had "fair notice" that she lacked probable cause to have Plaintiff arrested under the circumstances that she confronted. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United*

6

*States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992).  Probable cause "does not require convincing proof" that the offense was committed, nor does it require proof beyond a reasonable doubt or even by a preponderance of the evidence.  *Manners v. Cannella*, 891 F.3d 959, 968 (11th Cir. 2018).

Plaintiff argues PTS Officer should have known she could not rely upon successive, close-in-time drug screening test results to prove new drug usage because, absent confirmation testing, such results do not reliably indicate whether THC/Creatine ratios are rising or falling.  For support, Plaintiff points to the Microgenics instructions, which advised the County not to rely on screening tests to determine new drug usage and instead to seek "a confirmed analytical result" (DE 14 ¶ 11).  Plaintiff also points to an undated conversation between the State Attorney and Dr. Aaron Brown of Cordant Labs, in which Dr. Brown advised that the "screening test used by the COUNTY on [Plaintiff] is unable to determine new usage" (DE 14 ¶ 16).  Based on these arguments, Plaintiff contends that PTS Officer had "fair notice" that she lacked probable cause.

Assuming all facts alleged in the Amended Complaint to be true, Plaintiff may well be correct that PTS Officer lacked probable cause to have him arrested.  Plaintiff has failed, however, to point to any "controlling and materially similar case law" that would have alerted PTS Officer that she could not rely upon successive, close-in-time drug screening test results to establish probable cause for new drug usage.  *See Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000) (noting that § 1983 plaintiff must point to "controlling and materially similar case law" to overcome qualified immunity).  The Court has reviewed the relevant authority and finds no "obvious clarity" in the caselaw or elsewhere that would have answered this question for PTS Officer.  At least one case supports the general proposition that drug screening test results can be used to support probable cause (though not addressing the precise issue of successive, close-in-

7

time drug screening tests and their ability to establish probable cause for new drug usage).  *See Richardson v. Morgan*, No. 3:19cv2974/LAC/EMT, 2021 WL 2905419, *6 (N.D. Fla. June 8, 2021) (noting that "positive drug screen, which violated the terms of [plaintiff's] probation … undermine[d] any assertion that probable cause for [plaintiff's] arrest was lacking").  In the absence of controlling, fact-specific authority, qualified immunity protects PTS Officer from liability.  *See, e.g.*, *Lucibella,* 2022 WL 910302, at *6.

The Court has considered, but finds unpersuasive, Plaintiff's argument that the state court's order of December 20, 2019, provided "fair notice" that PTS Officer could no longer rely on drug screening test results to support probable cause for future arrests.  Contrary to Plaintiff's argument, the state court order did not address the existence or nonexistence of probable cause, nor did it announce a principle of law applicable to future cases.  The order merely recognized, based on an agreement of the parties, that confirmation testing had disproven new drug usage in the case at hand (DE 14, Ex. B).  The mere fact that a suspect is later acquitted of an offense does not mean the underlying arrest lacked probable cause.  *See United States v. Lyons*, 403 F.3d 1248, 1254 (11th Cir. 2005) (noting that "the validity of the arrest does not depend on whether the suspect actually committed a crime").

In short, the Court finds that PTS Officer lacked "fair notice" that she would be violating Plaintiff's constitutional rights by causing him to be arrested based on the results of his successive, close-in-time drug screening tests.  As such, the Amended Complaint fails to allege facts sufficient to satisfy the second part of the two-part test necessary to overcome qualified immunity, i.e., a violation of Plaintiff's "clearly established" rights.  For all of these reasons, the Court finds that Count I should be dismissed.

### B.      Count III -- *Monell* Claim

Count III alleges a *Monell* claim, so-named after *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), where the Supreme Court recognized that municipalities qualify as "persons" subject to suit under 42 U.S.C. § 1983.  As noted in the previous Report and Recommendation, to demonstrate *Monell* liability against a municipality, a plaintiff must do more than merely show the municipality employed a tortfeasor, as the doctrine of respondeat superior does not apply to 42 U.S.C. § 1983.  *Id.* at 691.  "[A] city is not vicariously liable under § 1983 for the constitutional torts of its agents:  It is only liable when it can be fairly said that the city itself is the wrongdoer."  *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992).

To that end, in *Monell* and its progeny, the Supreme Court has defined very narrow circumstances under which a municipality can be held liable for a constitutional injury.  In this case, Plaintiff has identified two recognized theories of *Monell* liability, each of which the Court will address below.

### 1.      Custom and Practice

Plaintiff first alleges a "custom and practice" theory (DE 14 ¶ 44).  *Monell* recognizes that municipalities may follow informal customs or practices that cause constitutional violations even though such customs or practices have "not received formal approval through the body's official decisionmaking channels."  436 U.S. at 690-91 (citations omitted).  To show a custom or practice, Plaintiff must allege facts that show a widespread pattern of conduct "so permanent and well settled as to constitute a 'custom or usage' with the force of law."  *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  As the custom or practice must be widespread and repeated, "random acts or isolated incidents are insufficient to establish a custom[.]"  *Depew v. City of St. Mary's*, 787 F.2d

1496, 1499 (11th Cir. 1986); *see also Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1328 (S.D. Fla. 2018) ("[T]he plaintiff must allege a 'pattern' of [violations] including specific facts of numerous incidents[.]").

Here, the Amended Complaint fails to allege facts sufficient to show a *widespread* practice of arrests based solely on drug screening results, which results were later disproven by confirmation testing.  Indeed, the Amended Complaint fails to allege any facts beyond those of Plaintiff's own case.  *See Scott v. Miami-Dade Cnty.*, No. 13-civ-23013, 2016 WL 9446132, at *4 (S.D. Fla. Dec. 13, 2016) (dismissing § 1983 claim where "Plaintiff alleges facts only about his own case, and fails to allege a single fact involving other instances of alleged constitutional violations resulting from the same allegedly inadequate policies and procedures"); *Asia v. City of Miami Gardens*, No. 14-20117-CIV, 2016 WL 739656, at *8 (S.D. Fla. Feb. 25, 2016) ("Plaintiff has failed to present any evidence of prior incidents of constitutional injuries similar to his ... and his own experience with the City's police officers is insufficient to establish a custom or practice."); *Paylan v. Bondi*, No. 8:15-cv-1366-T-36AEP, 2017 WL 9398657, at *20 (M.D. Fla. Feb. 28, 2017) ("But Paylan has submitted no additional facts, beyond those alleged in the Second Amended Complaint about her own situation, to support allegations that a widespread practice of false arrests exists.").

Because the Amended Complaint fails to allege facts that show a widespread practice, the Court finds Count III should be dismissed to the extent it alleges a *Monell* claim based on the custom-and-practice theory.  The Court now turns to Plaintiff's second theory.

### 2.    Failure to Train

Plaintiff next alleges a "failure to train" theory (DE 14 ¶¶ 40, 44).  The Supreme Court recognizes "limited circumstances" under which "failure to train" can give rise to *Monell* liability.

*City of Canton v. Harris*, 489 U.S. 378, 387 (1989).  Specifically, inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Id.* at 388.  To show "'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and that the municipality made a deliberate choice not to take any action."  *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  The Eleventh Circuit has repeatedly held that, without notice of a need to train or supervise in a particular area, a municipality cannot be liable as a matter of law under a failure-to-train theory.  *Id.*

The Eleventh Circuit has adopted the following pattern jury instructions to describe the elements of a *Monell* failure-to-train claim:

> To succeed on this claim, [name of plaintiff] must prove each of the following facts by a preponderance of the evidence:
>
> First: That [name of officer] violated [name of plaintiff]'s [describe constitutional right];
>
> Second: That [name of officer] was not adequately [trained, supervised] in [describe relevant area, e.g., the use of deadly force];
>
> Third: That [name of official policy-maker] knew based on at least one earlier instance of unconstitutional conduct materially similar to [name of officer]'s violation of [name of plaintiff]'s constitutional rights that [additional] [training/supervision] was needed to avoid [describe alleged constitutional violation] likely recurring in the future; and
>
> Fourth: That [name of official policy-maker] made a deliberate choice not to provide [additional] [training/supervision] to [name of officer].

Eleventh Circuit Pattern Jury Instruction (Civil) No. 5.11, Government Entity Liability for Failure to Train or Supervise.

The Court has reviewed the allegations of the Amended Complaint and finds, after construing all allegations in the light most favorable to Plaintiff, that Count III states a viable

*Monell* failure-to-train claim as to Plaintiff's second arrest.  Specifically, the Court finds the allegations related to Plaintiff's first arrest and subsequent exoneration served to put the County on notice of a need to train its probations officers as to the limited value of successive, close-in-time drug screening test results and their inability to determine new drug usage, without first obtaining confirmation testing.  Taken as a whole, the Amended Complaint adequately alleges that the County, despite having notice of this issue, made a deliberate decision to forego further training, which caused PTS Officer to arrest Plaintiff for a second time when he once again tested positive on a Microgenics drug screening test on December 26, 2019, only to be exonerated yet again by subsequent confirmation testing (DE 14 ¶¶ 40-44).

The Court reaches this conclusion only as to Plaintiff's second arrest.  Also, this ruling does not preclude a different result at summary judgment based on the facts and circumstances developed during discovery.  For all of these reasons, the Motion should be denied as to Count III to the extent it alleges a *Monell* failure-to-train claim based on Plaintiff's second arrest.

## IV.     RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned respectfully **RECOMMENDS** as follows:

1.      The District Court should **GRANT** the Motion as to Count I.  The undersigned further **RECOMMENDS** that Count I be dismissed with prejudice, as Plaintiff has already had a previous opportunity to state a claim.

2.      The District Court should **DENY** the Motion as to Count III to the extent it alleges a *Monell* failure-to-train claim based on Plaintiff's second arrest.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the District Court. Failure to file objections timely shall bar the parties from a de novo determination by the District

Court of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

      **RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 1st day of June 2023.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE