UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 2:22-cv-14350

JOHN MCCARTHY,

  Plaintiff,

v.

LASHERI BAKER and ST. LUCIE COUNTY
BOARD OF COUNTY COMMISSIONERS,

  Defendants.
_____/

## DEFENDANTS ST. LUCIE COUNTY AND LASHERI BAKER'S MOTION FOR FINAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendants, ST. LUCIE COUNTY ("the COUNTY") and LASHERI BAKER ("BAKER"), pursuant to the provisions of Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, request this Court enter Final Summary Judgment in their favor as to: (1) Count III of the Amended Complaint, a civil rights claim based on a failure-to-train theory of *Monell* liability pursuant to 42 U.S.C. §1983; and (2) Counts II and IV, Florida state-law false arrest claims against Defendants BAKER and ST. LUCIE COUNTY, respectively.[1]

As the following arguments and citations of authority demonstrate, along with the contemporaneously filed Statement of Material Facts Not In Dispute, no liability can be imposed against Defendant ST. LUCIE COUNTY on a §1983 failure to train theory of liability for the

---

[1] These are the only counts remaining in the Amended Complaint following this Court's partial grant of a Motion to Dismiss that determined BAKER was entitled to qualified immunity on the individual §1983 claim, Count I, and limited the scope of Count III to the second arrest on a failure-to-train theory. (D.E. 36)

Plaintiff's second arrest on January 3, 2020 because: (1) the COUNTY supervised and trained all pre-trial service officers on drug testing procedures; (2) on December 19, 2019, the COUNTY instituted and trained drug lab and pre-trial services personnel following the Plaintiff's release after his first arrest on a newly instituted "two negative test approach" system for detecting new marijuana usage; and (3) the Plaintiff's second arrest was based on well-established scientific principles that new usage had to have occurred given the Plaintiff continued to test positive at or about the same THC levels as when he was initially tested on October 28, 2019.

With regard to the state-law false arrest claims, there exist no genuine issues of material fact in dispute that probable cause existed for both the first and second arrests. Additionally, as to Defendant BAKER, pursuant to the provisions of §768.28(9)(a), Fla. Stat. she is immune from suit because there was nothing she did in submitting pre-trial release violations that was done in bad faith, with a malicious purpose, or in a willful or wanton manner.

Based upon the foregoing, therefore, Defendants ST. LUCIE COUNTY and BAKER are entitled to final summary judgment in their favor on all remaining claims, the §1983 claim, Count III of the Amended Complaint, as well as Counts II and IV, the state-law false arrest claims. If the Court grants summary judgment on the §1983 claim and does not elect to consider disposition of the state-law false arrest counts, given there would then exist no independent basis for federal jurisdiction, this court should decline to exercise jurisdiction over the state-law false arrest claims and remand those claims to state court pursuant to the provisions of 28 U.S.C. §1367(c)(3).

**I.     INTRODUCTION**

This case arises out of Plaintiff's two arrests when he violated the terms and conditions of his pre-trial release on state-law criminal charges.

Plaintiff, MCCARTHY was initially arrested in October 2019 and charged with battery and battery on an elderly person. On October 30, 2019, the Plaintiff was placed on pre-trial release by a state-court judge with a requirement, inter alia, that he use no drugs or alcohol and submit to random drug screens. During his initial intake drug screen he tested positive for cannabinoids (THC) and admitted that he had last used marijuana on October 28, 2019. Thereafter, Plaintiff underwent drug screening tests on November 5 and 13, 2019 through the St. Lucie County's drug lab and tested positive. These results based upon well-established toxicology principles indicated new drug usage. On November 21, 2019 a pre-trial services officer, Defendant BAKER, reasonably relying on the drug lab's conclusions, sought the arrest of Plaintiff for violating the conditions of his pretrial release.

The Plaintiff's criminal counsel, in an effort to secure the Plaintiff's release from pretrial detention, communicated with a private drug testing lab and the State Attorney's office regarding the bona fides of the test results. Plaintiff then filed an unopposed Motion to reinstate Plaintiff MCCARTHY's bond and to be released from the St. Lucie County Jail. ST. LUCIE COUNTY was not requested to nor did it participate in the arguments regarding the unopposed Motion and the Motion was granted.

On December 19, 2019, based partly upon these developments, which had never been encountered previously with any other individual on pre-trial release, the ST. LUCIE COUNTY drug lab and pretrial services instituted a revised testing procedure, the "two negative test approach", to determine new drug usage. This new approach to the determination of new drug usage was based upon the recommendation of Paul Cary, a well-respected scholar and the Scientific Director for the Toxicology Laboratory, University of Missouri. Mr. Cary recommended that two consecutive negative test results separated by a seven-day interval be utilized to determine

when an individual has reached his or her abstinence baseline. This approach provides that after 30 days continued cannabinoid positive urine drug tests "almost certainly indicate marijuana usage at some point during the detoxification period."

The Plaintiff was again tested on December 26, 2019 pursuant to the terms of his release. Given that he claimed he had not used marijuana since October 28, 2019, almost two months prior, under well-established scientific guidelines only the most minimal trace amounts should have been detected. In fact, however, this was not the case and the Plaintiff was re-arrested. The Judge for this second arrest was advised prior to revoking pretrial release that Plaintiff wanted confirmation of the drug lab's conclusions but the Judge still revoked release.

Plaintiff was incarcerated from January 3, 2020 through January 8, 2020, when he again secured his release. It is from this second arrest that the remaining component of the §1983 *Monell* claim in the Amended Complaint emanates.

Summary judgment on Count III in favor of the COUNTY is appropriate because the COUNTY drug lab and pre-trial services employees were in fact adequately trained, the issues attendant with the first arrest were addressed, and a deliberate choice was made to provide training and modification of the training and standards. There was absolutely no actionable deliberate indifference to the Plaintiff's constitutional rights. As to Counts II and IV, the state-law false arrest claims, probable cause existed for both arrests. Additionally, as to Defendant BAKER, she is immune from suit because there was nothing willful or wanton about her seeking revocation of the pretrial release.

## II. PROCEDURAL HISTORY

Plaintiff's initial Complaint named LASHERI BAKER and ST. LUCIE COUNTY as Defendants and asserted state-law false arrest and §1983 claims against each Defendant based on

both the first and second pretrial release arrests. (D.E. 1) Both Defendants moved the dismiss the §1983 claims. (D.E. 6) Defendant BAKER's Motion was based on qualified immunity. As to Defendant ST. LUCIE COUNTY the Motion was based on the failure to state a claim upon which relief could be granted given insufficient allegations to support a *Monell* theory of liability on custom and practice, or failure to train, in addition to the lack of any unreasonable search and seizure. (D.E. 6)

This Court granted the motions to dismiss the two §1983 claims and provided Plaintiff an opportunity to amend. (D.E. 13) An Amended Complaint was then filed containing identical claims and counts as the initial Complaint. (D.E. 14)

Defendant BAKER again moved to dismiss the §1983 claim in the Amended Complaint against her, individually on the basis of qualified immunity. (D.E. 15) That motion was granted and Count I of the Amended Complaint was dismissed with prejudice. (D.E. 36) Defendant ST. LUCIE COUNTY moved to dismiss the §1983 *Monell* claim in the Amended Complaint and that Motion was denied but only to the extent of a *Monell* failure-to-trial claim based on Plaintiff's second arrest. (D.E. 15, 36)

The Report and Recommendation of the Magistrate on the Motion to Dismiss the Amended Complaint (D.E. 19) found that the <u>allegations</u> related to Plaintiff's first arrest and subsequent exonerations potentially served to put the COUNTY on notice of a need to train its probation officers as to the limited value of successive, close-in-time drug screening test results and their inability to determine new drug usage, without first obtaining confirmation testing. Therefore, as to the Plaintiff's second arrest, the arrest on January 3, 2020, the Motion was denied as to Count III to the extent it alleged a *Monell* failure-to-train claim. The Report and Recommendation, however, noted this ruling does not preclude a different result at summary judgment based on the

facts and circumstances developed during discovery. (D.E. 19, p. 12) It is this remaining portion of the *Monell* claim the to which the instant Motion for Partial Summary Judgment is directed.

### III.    ARGUMENT

#### A.    As to the §1983 Claim County Employees Were Trained, and Relied on the Drug Lab Who Revised its Procedures - No Constitutional Violations Occurred

The strictures of *Monell* liability are well established. The Supreme Court recognizes "limited circumstances" under which "failure to train" can give rise to *Monell* liability. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Specifically, inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388.

To show "'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and that the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). The Eleventh Circuit has repeatedly held that, without notice of a need to train or supervise in a particular area, a municipality cannot be liable as a matter of law under a failure-to-train theory. *Id.*

The Eleventh Circuit has adopted, and the Magistrate quoted in total in the Report and Recommendation directed to the Motion to Dismiss the Amended Complaint, the following pattern jury instructions to describe the elements of a *Monell* failure-to-train claim:

> To succeed on this claim, [name of plaintiff] must prove each of the following facts by a preponderance of the evidence:
>
> First: That [name of officer] violated [name of plaintiff]'s [describe constitutional right];
>
> Second: That [name of officer] was not adequately [trained, supervised] in [describe relevant area, e.g., the use of deadly force];

> Third: That [name of official policy-maker] knew based on at least one earlier instance of unconstitutional conduct materially similar to [name of officer]'s violation of [name of plaintiff]'s constitutional rights that [additional] [training/supervision] was needed to avoid [describe alleged constitutional violation] likely recurring in the future; and
>
> Fourth: That [name of official policy-maker] made a deliberate choice not to provide [additional] [training/supervision] to [name of officer].

Eleventh Circuit Pattern Jury Instruction (Civil) No. 5.11, Government Entity Liability for Failure to Train or Supervise.

The pattern jury instruction on the failure to train or supervise, extensively relied upon by the Magistrate in ruling on the Motion to Dismiss the Amended Complaint demonstrates Defendant ST. LUCIE COUNTY's entitlement to summary judgment in its favor on Count III of the Amended Complaint.

First, as the Statement of Material Facts Not in Dispute conclusively establishes, Defendant BAKER was in fact trained and supervised and was provided an extensive training on drug screening, including the Creatinine-Normalized Cannabinoid results to be utilized in a forensic context for the determination of new drug exposure and usage. She was trained to rely on the Drug Lab results. In fact, it is undisputed that the COUNTY relied on Paul Cary, the Scientific Director of the Toxicology and Drug Monitoring Laboratory at the University of Missouri Hospital and Health Care System in Columbia, Missouri, for the scientific principles on which the drug lab was trained and operated and on which pretrial services would rely to establish whether new drug usage had occurred. Mr. Cary was involved in the management of nationally-recognized toxicology laboratories, and was a resource to drug court teams throughout the Nation. This was the methodology utilized regarding the first arrest.

As outlined above, *Gold* requires a political subdivision make a deliberate choice <u>not</u> to train. In the instant case, the County trained its pretrial services employees to rely on drug testing

results using methodology by nationally recognized toxicology experts. This is <u>not</u> deliberate indifference, but constitutionally proper training.

Regarding the second arrest, the COUNTY revised its policies and procedures on December 19, 2019 by utilizing the two negative test approach to determine new usage. Again, this was based on nationally recognized toxicology drug court expert methodology. However, given that the Plaintiff himself advised the COUNTY that he had not engaged in any new usage since October 28, 2019 well-established scientific principles indicated that his THC levels should have been virtually non-existent. In fact, after 60 days of claimed non-usage he was still testing positive.

Given the foregoing, it is eminently clear ST. LUCIE COUNTY made an absolute choice to revise its policies and procedures and trained its employees appropriately. There was nothing done to even remotely evidence deliberate indifference regarding training or in any other manner for that matter. Furthermore, it should be noted that this situation had never presented itself except for the one prior arrest of the Plaintiff, the first arrest.

Moreover, it is patently absurd to expect that between December 21, 2019 and January 3, 2020, issues attendant with the first arrest should have been analyzed, training implemented, and revised. This was a period less than two-weeks and over a Christmas and New Year's holiday. Again, there is no evidence of deliberate indifference nor lack of training on which any jury could possibly find in favor of Plaintiff on a *Monell* failure to train theory.

### B. <u>Probable Cause Existed for Both Arrests.</u>

With regard to the state-law false arrest claims, Count II against Defendant BAKER, individually, and Count IV against the COUNTY, both Defendants are entitled to summary

judgment in their favor. Probable cause existed for the Plaintiff's two pretrial release arrests. This is an absolute defense to a state-law false arrest claim.

Under Florida law, probable cause is an affirmative defense to a tort claim of false arrest. *Battiste v. Lamberti*, 571 F. Supp. 2d 1286 (S.E. Fla. 2008). Where an officer has "probable cause" to engage in acts resulting in a detention, a claim for false arrest and false imprisonment is precluded. *Grix v. Florida Fish and Wildlife Conservation Commission*, 821 So.2d 315 (Fla. 4th DCA 2002). Moreover, probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person arrested is guilty of a criminal offense. *Daniel v. Village of Royal Palm Beach*, 889 So.2d 998 (Fla. 4th DCA 2004).

Application of the foregoing principles to the material facts not in dispute conclusively establish that both probable cause existed for the first and second rearrests. The drug lab conducted testing and based upon the "gold standard" for confirming new marijuana usage and the scientifically viable toxicology principles utilized by the ST. LUCIE COUNTY Drug Lab, probable cause existed as a matter of law for both arrests. Any reasonable officer when presented with this information from the Drug Lab would conclude probable cause existed that plaintiff continued to use marijuana.

Moreover, the fact that the state criminal court released the Plaintiff after both arrests is absolutely immaterial to the determination of whether probable cause initially existed. *Thomas v. Beary*, 770 So.2d 699 (Fla. 5th DCA 2000). An officer who arrests someone with probable cause is not liable for false arrest simply because the "innocence" of the suspect is later proved, despite there has been no determination in this case whether new usage in fact occurred. *Boca Raton v. Coughlin*, 299 So.2d 105 (Fla. 4th DCA 1974).

Furthermore, regarding the second arrest, the Judge was advised the Plaintiff had requested confirmation testing yet decided to revoke the release. This decision by the Judge broke the claim of causation for a false arrest claim. *Drudge v. City of Kissimmee*, 581 F. Supp. 2d 1176 (M.D. Fla. 2008).

### C. Defendant Baker is Immune From Suit in Her Individual Capacity

Second, with regard to the claim against BAKER, individually, for false arrest the provisions of §768.28(9)(a), Fla. Stat. preclude the claim against her in an individual capacity as there is no genuine issue of material fact in dispute regarding the absence of bad faith, malicious purpose, or wanton and willful disregard of human rights, safety, or property.

There is simply nothing in the facts and circumstances surrounding Defendant BAKER's directive from the supervisor of pre-trial services based upon the Drug Lab's testing, analysis, and confirmation that Defendant BAKER knew or reasonably should have known in light of the surrounding circumstances that her conduct would probably result in injury and, with such knowledge, disregarded the foreseeable in juris consequences. *Keating v. City of Miami*, 598 F. Supp. 2d (S.D. Fla. 2009)

It is clear that Defendant BAKER was acting within the course and scope of her employment and evidenced no malice or willful misconduct whatsoever. She reasonably relied upon information provided by the drug lab and would have no basis to even question the legitimacy of the test results.

In conclusion, Defendant ST. LUCIE COUNTY is entitled to summary judgment in its favor on Count III of the Amended Complaint, the §1983 *Monell* claim based on the second arrest. Defendants ST. LUCIE COUNTY and BAKER are entitled to summary judgment in their favor on Counts II and IV, the state-law false arrest claims.

CASE NO. 2:22-CV-14350

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using CM/ECF and served on all counsel of record on the attached service list in the manner specified either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on this 8th day of April, 2023.

CONROY SIMBERG
Attorney for St. Lucie County
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL 33401
Telephone: (561) 697-8088
Facsimile: (561) 697-8664
Primary Email: eservicewpb@conroysimberg.com
Secondary Email: jblaker@conroysimberg.com

By: /s/ *Jeffrey A. Blaker*
Jeffrey A. Blaker, Esquire
Florida Bar No. 443913

## **SERVICE LIST**

JOHN MCCARTHY v. LASHERI BAKER, AND ST. LUCIE COUNTY BOARD
OF COUNTY COMMISSIONERS
CASE NO: 2:22-cv-14350

Jordan R. Wagner, Esq.
KIBBEY | WAGNER
73 SW Flagler Avenue
Stuart, FL 34994
Email designation:
jwagner@kibbeylaw.com
diana@kibbeylaw.com
Phone: (772) 444-7000